Good afternoon and may it please the Court, David Thompson for the appellants. This case presents the question of whether a district court barred from publicly televising a trial, barred by a local rule that was enforced by the United States Supreme Court, can nevertheless publicly broadcast the trial by, number one, videotaping the trial on the express condition that the tape would not be used for purposes of public broadcasting, two, placing the tape in the record of the case under seal while issuing the reassurance that the potential for broadcast had been eliminated, and then three, concluding that the common law right of access requires the unsealing of the tape. We submit that if the answer to that question is yes, then grave injury will have been done to the federal judicial process. But fortunately, the answer is no, and the answer is no because the common law right of access is preempted by 77-3. The Supreme Court in the Hollingsworth decision said that that rule has the force of law, and it is commonplace for the federal rules of civil procedure, the federal rules of criminal procedure, to preempt the common law right of access. We know that this is the right result because Chief Judge Walker, in his opinion, when he put the tape in the record, said the potential for broadcast had been eliminated. And the plaintiffs themselves said in their post-trial briefing that from at least January 14th on, proponents and their witnesses knew for a fact that these proceedings would not be broadcast to the public in any form. The plaintiffs acknowledged this. Chief Judge Walker acknowledged this. And the reason is simple. There is the common law must yield to something that has the force of law. Counsel, did anyone ever challenge him, the good judge, putting this recording in the record? No, Your Honor, we did not. Did anyone ever appeal that decision? No, Your Honor. So the best you have to argue on that is we didn't do it because we didn't think we had to? Well, for two reasons, number one, Your Honor, he assured us in that very order, that same order where he places it under seal, that the potential for public broadcast had been eliminated, number one. And number two, he had not violated Rule 77-3. Putting it in the record under seal did not violate Rule 77-3, which prohibits public broadcast outside the confines of the courthouse. So there would have been nothing to appeal at that time, Your Honor. Judge Ware's decision, under what standard of review do I review that decision? Well, Your Honor, I think there are several different questions before the Court,  Well, Your Honor, under this Court's decision in Times-Mirror, the threshold question of whether this is even the type of material to which the common law right of access is subject to is not a question of the Court's discretion.   is a de novo question of law. Oh, it's legal. It's legal. Now, the Court is correct, and so is the question of whether 77-3 preempts the common law right of access. That's a pure question of law that's de novo. We would concede that if we're in a world where the common law right of access applies to this material, then that judgment would be entitled to abusive discretion, although, of course, an error of law is abusive discretion. So you're suggesting, then, I've got three different standards in this one case. Why can't I just go under abusive discretion and failure to apply the law as it is is, in fact, an abuse? Well, Your Honor, it's just the threshold question is a pure question of law. We would concede that if we're in a world where we're applying the common law to the facts and circumstances of this case, that is abusive discretion. But that threshold question is a question of law, and that's what Times-Muir says, Your Honor. Now, in terms of the common law, if we were in a world where the common law were to apply, there is no case that the plaintiffs have cited to where a video recording of a trial has been found to be covered by the common law right of access. The closest case is the McGill. Is there any case that said it was not covered? No, Your Honor. But the closest case is the McDougall case out of the Eighth Circuit. There was a videotape of President Clinton's deposition in a criminal prosecution. The videotape was played to the jury. It was a jury trial, and it was submitted, therefore, as evidence. And that was a case where the Eighth Circuit found, as a matter of law, that the common law right of access did not apply. Now, the plaintiffs say, well, wait a minute. The Eighth Circuit doesn't have a strong presumption of the common law right of access the way this Court does. And the answer to that is that the Eighth Circuit, when they were looking at whether this type of material was even covered, did not – the presumption was not relevant. It was only relevant to the backup alternative holding that the Eighth Circuit provided, saying, well, even if the common law right of access did apply, we wouldn't find an abuse of discretion for not having turned – unsealed the tape. Were your clients under the impression that these tapes would be forever sealed? No, Your Honor. I believe that a seal lasts for – not necessarily, I guess is the better answer – is the seal lasts for 10 years under the local rules of the Northern District of California, and at the end of the trial – at the end of the proceedings, at the end of the case, then we would be entitled to go in and ask for an extension of that time to a specific date. But it would be a minimum of 10 years, Your Honor. And it's clear from the record your client understood that and acted on that basis? There's – the record, I don't believe, has anything one way or the other on that. But, yes, we were aware of the local rules, Your Honor, and that it was a minimum of 10 years and that we would have the opportunity to ask for an extended seal if we could make a good cause showing of that. Now, the McDougall case we submit, therefore, is instructive. One of the points that the plaintiffs have made is that there's no harm. That what is the harm of allowing this tape to come forward? And there are four separate harms that I'd like to identify. I'd first say that on those threshold legal questions of whether 77-3 preempts the common law or whether this is the type of material that's covered by the common law, harm isn't relevant. But if we're in a world where the common law applies, then there would be four harms. One is the harm of witness intimidation and harassment. And this is a harm that the Supreme Court, in this very case, said that we had substantiated our concerns by citing to incidents of past harassment. And there are dozens of articles in the record. And when was that ruling made, Counselor? That was in early 2010, Your Honor. And those incidents were over a year. Well, how relevant is that? Well, it's quite relevant, Your Honor, because, first of all, the incidents were over a year old at the time that the Supreme Court ruled, and they didn't think that they had somehow become stale from 2008 to 2010. But a lot of things have happened since then, haven't they? Well, Your Honor, I would say a couple of other things, that the passage of time, to the extent the Court is suggesting, well, the passage of time, passions have ebbed, the harassment and violence and vandalism that we saw in 2008 is ebbed down. With respect to this litigation, we would submit that the intensity of interest and the passions will only grow into a crescendo as this case reaches its final conclusion, wherever that may be. But you had, what, two witnesses? Yes, Your Honor. And those two witnesses were well known, and one of them went on television regularly to express his views. Nothing had happened to those two witnesses? No harassment during or after the trial? Well, Your Honor, Mr. Blankenhorn is a well-known advocate and expert in this area, and he has said candidly that he was not concerned about harassment of himself. Now, there are other harms beyond this one, and those would apply up to you. Well, I know, but this was the first of the four harms. Right, right. This is the first of four. And so with respect to Mr. Blankenhorn, he is a man, I suppose, of unusual fortitude, and he was not concerned about this. He has strong convictions. And so he was not concerned about this. As for the other expert, Your Honor, his testimony hasn't been broadcast, so we didn't try to catalog the extent to which he had or he hadn't been harassed because of the fact that he testified and who he was. But the fact that he testified and who he was was part of the public record, right? Oh, yes, Your Honor, it was. So there's no secret that he testified for the proponents and who he was. Yes, that's the thing. So what's the difference between that and the content of his testimony? Well, Your Honor, the difference — Was there some surprise in there? No, Your Honor. The difference is the difference that has led the Judicial Conference of the United States after what they've termed decades of study of this issue to conclude that witnesses are intimidated, that witnesses are less likely to come forward, and that it is — and there are the other harms that I was about to mention, the second of which is the possible harm of distortion of one's views. We're giving up on the first harm, right? Well, no, we're not giving up. I wanted to segue from that. But, Your Honor, on the first harm, the second witness, he — we have not cataloged whatever harassment was or was not visited on him because it wasn't attributable to the broadcast. There hasn't been a broadcast. So to the extent he was harassed, it wouldn't be something that this Court had any authority to do. And beyond that, in the public findings of fact, didn't the district judge discuss what the witnesses had to say? Oh, yes, Your Honor. And the transcript — But there's no secret about that. That's true. The transcript — But what is under seal is a videotape of them saying that, right? Yes, Your Honor. And this is something that the Judicial Conference of the United States — they did a pilot project on this in the late 1980s. They had, I believe, it was six district courts and two courts of appeals. And they also analyzed what was happening in the states with cameras in the courts. And then they surveyed the judges and they asked, has this made a difference? And they found, I think it was 46 percent of the judges said, yes, we feel that witnesses are being intimidated by this. And 64 percent of the judges said, we think witnesses will be less likely to want to cooperate. And so these are aspects of it. And I think that's what led the Judicial Conference, having looked at this issue. In all of those cases, the identity of the witnesses was known. The transcript was known. It was all public. The difference was the broadcast. And that's what's led the Judicial Conference to have this longstanding policy prohibiting in the trial court. Of course, courts of appeals are different. There aren't witnesses here. And that's the difference. Your second witness, Dr. Miller, testified only about what the political power of gays was in the California or the United States. He was not an expert who testified that gays shouldn't be allowed to marry or anything on the political aspect of it. His testimony was only as to whether they qualified under the people with less power, more power, and the other qualifications that would give you a better standard to meet, an easier standard to meet at law. And he didn't make any kind of remarks that gays could resent. What he said was that they had more political power that made them an oppressed minority. Wasn't that his testimony? Your Honor, that is correct, that he is a political scientist and his testimony was focused on the political power of gays and lesbians in California. It's not likely that he's going to be harassed or strung up or experience any terrible things because he gave an objective political view that didn't include any values as to whether gays were good or bad, should be allowed to marry or not allowed to marry. He just testified about a legal standard. Well, Your Honor, the Rule 77-3, as well as the statements by former Chief Judge Walker, put Dr. Miller in her profile. He didn't have to assume that risk. He was operating and taking the court at its word when it said it had eliminated the potential. That's another issue. That's not issue one, whether he's likely to be harassed. I think we could really go back to my question. Don't you think we could forget that issue and that this doctor is not going to be harassed because he testified as a political scientist that gays have political power, which I think is something that's not maybe debatable to some extent, but. Well, Your Honor, in the record, and it's at excerpts of record 750, is the declaration of Mr. Schubert, who is a political expert in California. He ran the campaign for Proposition 8, and he talks about how he received hundreds of harassing e-mails, many of which said the world would be ---- You'd think there'd be more resentment among gays against him than a professor who simply testified about what standard of constitutional proof should apply. Well, the newspaper articles, Your Honor, many of them that talk about acts of violence and vandalism are against people who put a sign in their law. I think you've got four points and a limited time, so why don't we go on to two, three, and four. Thank you, Your Honor. All right. So the second point, and this is a point that Justice Scalia and Justice Breyer recently testified to in Congress, relates to the distortive effects of videotape, that when you have a video out there of your testimony, it can be sliced and diced in a number of ways that are ---- Was this expert testimony? This was testimony that they provided to Congress. I understand. I was asking whether it was expert testimony. I don't know, Your Honor, but they ---- You don't know and you don't want to answer? But it is a concern that they voiced. And the sponsors of this lawsuit, this isn't idle speculation, the sponsor of this lawsuit has said that they are going to flood the Internet with snippets of testimony if this video recording is made public. The third harm is one that was identified by the Supreme Court itself where it said that witnesses subject to harassment as a result of broadcast of their testimony might be less likely to cooperate in any future proceedings. And so if this is broadcast and if harm and harassment does flow from it, then that would be another item of harm that the Supreme Court has credited in this very case. And the fourth harm is really a systemic one. And it goes to the credibility of the judicial function and process in the United States. If litigants hear that a court has told them that the potential for broadcast has been eliminated, and if they read a local rule that says public broadcast is not permitted, and then they are nevertheless, they find that in fact there will be public broadcast. This is a systemic harm, not a harm to your clients. It is a systemic harm. It would be a harm to my clients who relied on it, but it would be far broader than just this case, Your Honor. If we were to conclude that the district judge made a binding commitment that these tapes would not see the light of day and that you and your clients relied upon that to their detriment, do we even need to look at harm? No, Your Honor. I agree with that, that if we're, if, number one, the court concludes that 77-3 preempts the common law, then we don't need to look at harm. And if the court follows what the Eighth Circuit did in McDougall and says, this just isn't the sort of material that the common law applies to. But neither of those apply to what he just asked you. Well, and that would be a third basis. I just wanted to make clear that it's really you only get to harm if you're in a world where we've lost on everything else. I would like to just briefly mention the – oh, go ahead. If I could, I'd like to go back to the Northern District's local rule. As I read the rule, I was trying to find where it barred what happened here. The rule doesn't bar, does it, that a recording can be made for the judge's purposes? Your Honor, it can be made for that purpose, yes, Your Honor. Does the rule really speak to whether the public ought to have access to a recording that has been lawfully created? Well, it does in the sense of it's – What language in the rule speaks to that? Well, it says that it can only – that public broadcasting is prohibited. And if public broadcasting – Well, it says public broadcasting is prohibited, but I guess I'm trying to – where does this rule speak to whether one enters what Judge Walker did in the record or not? That it doesn't speak to, and that's precisely why we did not file an appeal or try to seek a petition for mandamus when he put it in the record under seal. So if he can create it for his own purposes, he can enter it into the record, and you don't appeal that, I guess I'm trying to figure out how this rule preempts the common law right. Your Honor, he has to enter it into the record under seal so that it will not be publicly broadcast, and that's what he did. Is that just because of the ruling, or is that just because – I mean, if in fact we have under this rule documents that are entered into the record, it seems to me that there's nothing there if legally created and entered into the record that suggests the public shouldn't have access. If they're documents, this rule only speaks to the videotaping of a trial. Even if a videotape was legally put together and then legally entered into the record. If it's a videotape of anything other than the trial proceedings itself or under McDougall a deposition, then that too would be subject to the normal rules of seals, and 77-3 won't apply, but 77-3 absolutely applies to a video recording of a trial, which is what we have here. I see that – I guess I'm trying to figure out where it says that the rule prohibits unsealing of the record. It does not specifically state that, Your Honor, but what it does say is that the trial tape, that the trial cannot be publicly broadcast. And if this is unsealed and placed on the Northern District of California's website, then that is a public broadcast. I have to read that into the language of the rule? That certainly is the import of the language to us, Your Honor. Judge Reinhart, I'd like to save the balance of my time for rebuttal, if I may.  Thank you, Your Honor. Thank you, Your Honor. Good afternoon. Theodore Olson on behalf of the plaintiffs. In this circuit, as I understand repeated decisions of this Court with respect to access to judicial records, in the words of this Court, we start with a strong presumption in favor of access to court records, a strong presumption that may be overridden only if a compelling or compelling interests are demonstrated by specific articulable facts, and then only if there is a narrow restriction of access, narrowly focused on those particular compelling interests. There is no, it's not even close as to whether or not the proponents in this case have overcome that strong presumption, which is based not only in the common law, but in the First Amendment. Well, let's get to reason four offered by your opponents and discuss that. What's your view, and assume their analysis of the facts, what's your view of the interest of the judiciary in maintaining the integrity of the system if a district judge makes commitments about what will happen and then it's broken by the district court? The district judge at that point was talking about the purposes for which he was creating and I would sort of adopt the line that Judge Smith was pursuing. Judge Walker was creating the video for the purpose or keeping the video and putting it in the judicial record for the purposes which were not precluded. He didn't say it would never be released? Well, he said that in the context. This was after the trial, and in a finding of fact with respect to the fact that the trial had already taken place, he himself, without any request from the proponents, had sua sponte sealed the record with respect to that video recording. Seal orders are overturned all the time. This Court in the Folk's case. But just a minute. Let me talk to you about that. You suggest that he made a finding of fact in this particular matter? He did make a finding. It's one of the findings. Well, if he made a finding of fact in this particular matter, why does not the law of the case doctrine preclude Judge Ware from reexamining the issue after he stated as also his order the potential for public broadcast in the case has been eliminated? Well, I submit that in the first place that the construction of the local rule is something that is, as this Court has repeatedly held, is something in the discretion of the local court itself. Well, but you don't really want to go there because Judge Ware, in his opinion, suggested he wasn't going to get into interpreting the local rule. Well, he – but he did interpret the local rule, and his finding makes it clear that he – Well, all he did, as I understand it, is he tried to determine on an abuse of discretion measure whether, in fact, that rule as applied was appropriate. But he didn't want to talk about what the local rule said, nor to interpret  Well, he felt – he came to the conclusion that the video recording was made for a lawful purpose that was not precluded by the local rule. Judge Walker, when he created the judicial record, felt that it was not a violation of local rule 77-3, implicitly construing the purposes of the local rule. The local rule – I heard Mr. Thompson say that the local rule preempts the common law. I have never read a case that local rules, which are supposed to be procedural and are to be construed by the local court itself, preempts the common law, which has been repeatedly articulated by this court to create a strong presumption. This court held that a sealing order and a protective order in the Kamakana case and in the Foulkes case may be overturned under different circumstances when circumstances change or – and every lawyer knows that a sealing order may be reversed or changed. Didn't the – excuse me, Mr. Stolz. Didn't the Judge Walker's assurances about the purpose for continuing to tape the witnesses occur after the proponents had asked that videotaping cease? Yes, it had. They had not. The answer is yes. They had objected, yes. They had objected to the creation of the video itself. Well, this was after the Supreme Court had intervened and said, stop the project. And the Supreme Court's – yes, that's true. And the Supreme Court specifically said all it was doing was making a narrow decision with respect to whether the local – the amendment to the local rule had been violated in connection with the amendment of the local rule. But nevertheless, when the Supreme Court opinion came down in Hollingsworth, the proponents said, stop the taping. And the district judge said, the only purpose this is being for is for the purpose  And the district judge said, stop the taping. So that I can look at the testimony and it will be helpful to me in fashioning the findings of fact. That's correct. And on ER 1139 and 1140 are his exact words. He said, I don't think this violates the local rule for me to continue to maintain the video for use in chambers. He was correct with respect to that. He was interpreting the local rule. Judge Ware interpreted it the same way. But then he put it in the – as a part of the judicial record at that time. And there was no objection to that. Judge Ware specifically said, was there an objection to creating it as a part of the judicial record? Mr. Thompson said no. Judge Ware specifically asked at the beginning of that hearing, are you asking that it be removed from the judicial record? Mr. Thompson said no. To the extent that we're talking about reliance, the only reliance that can be is the withholding of a motion to stop it from happening. But the video itself was being created and maintained for a proper purpose. I suppose, Mr. Olson, that when Judge Walker, right after the Supreme Court said, don't take this for broadcasting. Now, supposing he had said, all right, I'm going to tape this for the use he announced. I'm going to tape this for use in chambers to help me reach a decision. It's for that purpose, which we are all assuming it was, for that purpose. And then he said, but, of course, when it's over and the trial's over, I'm going to release it for public broadcasting. What do you think would have happened then? Well, I think what would have happened then is that you would have heard more of an objection from the proponents. You would have heard an objection, which you didn't have when he said this is only for my use. He said this is the purpose for which I'm making it, and I am now putting it in the judicial record. Right. Consequences flow from that. And he had said at that time, I'm doing this for the purpose of assisting me in chambers. But, of course, you understand that although that's my purpose, when this trial is over, I'm going to release it for broadcasting. Well. What would the result of that have been? The result would have been presumably an objection from my opponents here, the proponents, who would have gone back to the Supreme Court and told them that what was happening following their decision. I don't think that would be the case, Your Honor. But that is something that didn't happen. The lawyers did not object, and they were still not objecting and not seeking. Walker did not tell them at the time that although he was making it for the purpose of using his chambers, that that meant that he could release it as soon as the trial was over for public broadcast. He didn't explain what the legal consequences to the lawyers would be of making something a part of the judicial record. There are decision after decision after decision from this Court with respect to what the consequences are of creating a judicial record. And that starts with that strong presumption of the right of the public to that. Now, if there – but we have to really go one step further. Are there any compelling reasons? There's no question that this is in the public record. It was put in the public record for a legitimate purpose. Judge Walker did use it in connection with forming his conclusion. Well, whether he put it in the record for a legitimate purpose, I don't know, is before us. It was put in the public record. But I guess my question is, this recording was put together in order to help Judge Walker in making his legal decisions. You'd agree with that? Yes. So why is not this recording analogous to the judge's notes or the clerk's notes? Because really all he was saying is, I don't want to have to write feverishly on my piece of paper here about what's going on, and I want to state what the facts are pretty well. And so for that purpose, I want to make this recording. That's the same thing I do as a district judge when I'm trying to do it, but I don't have the recording. I have to make notes. So what is the difference between the two? The notes themselves are a part of a deliberative process that a judge – So was the tape. No, the tape is a record, a true – How did it get to be a record? It was merely what he was using in place of my notes. Judge Smith, I submit that there's no question, but it is a fair, accurate, realistic transcription of what happened with video and sound and what happened during the trial. I'm not even arguing about that. I'm saying what was its purpose when made? The purpose was – The purpose when made was to use it instead of having his own notes, and therefore I have a tough time understanding how it all of a sudden became a judicial record. Tell me the case which would suggest it to be so. It is the same as a transcript with words on a piece of paper, which he could have consulted at any time. It isn't the reflection of his thought process. It is a record of what happened before him. It's the same as a transcript would be, except that it has two extra dimensions. It has actual sound, which would show the judge pauses, inflections, intensity of speech, and it has vision, which shows a witness changing his mind or his demeanor, body language. The judge specifically made credibility findings at the end of this trial. He said he was going to use the video to see and hear and read what was going on during the course of the trial. That's the same as a piece of evidence or a transcription. Let me ask you this. Does the fact that Judge Walker took this copy of the video recordings as a part of his judicial papers upon his retirement bear on whether this is a judicial record? No, I think that's something that happened afterwards. Well, just a minute. If he felt like it was a part of the judicial record, he had no right to take it as a part of his own judicial papers. It was specifically adjudicated by Judge Ware that he did have the right to take that home, but Judge Walker also offered to return it. He understood that it was appropriate for his copy to keep and take with him. Judge Ware adjudicated that that was appropriate, but he also offered to return it. It doesn't change the fact that the video recording that we're talking about here, which was not only used by the judge in formulating his conclusions, it was also used by the litigants in the closing argument to illustrate points, and there was no objection to it being used for that purpose. Well, I guess the question really comes down then, are these video recordings merely electronic recordings of witness testimony, which would be McDougall, or are they instead similar to documentary evidence? They're similar to a transcript. They're a different form of a transcript of the trial, a more accurate. There was a transcript, wasn't there? Yes, but this is a more accurate transcript because it allows the person viewing it to hear and see what was going on. How is this different from what a court reporter does? A court reporter takes stenographic notes of what goes on at trial, but she's also entitled to take a recording of what happens at trial. And she does take a recording that happens at trial. So how is that any different from what the court reporter does, which is not a judicial record? This was made a part of a judicial record by Judge Walker. He ordered it because he wanted to use it. This is different in the sense that it has video as well as sound connected with it. I want to make one quick point before I turn it over because I'm sensitive to the allocation of time. There is no affidavit or any specific evidence of any harm to any witness. There is no affidavit from any witness that said the witness was intimidated or feared for his safety. There were dozens of hours, scores of hours of videotaped depositions of all of these witnesses, which are available, which were not objected to, which are in the public record.  So there is no articulable specific evidence of any harm, and there's no conceivable way that the order banning use of this video would be narrowly tailored, because 95 percent of the trial didn't involve the plaintiff's witnesses at all. The principal plaintiff witness, Mr. Blankenhorn, said, I never did fear for my own safety. So for all of those reasons, starting with the presumption of the public's right of access, the fact that there are no compelling reasons to prohibit the use of the video as a part of a record, the order itself, which would keep it out, is not narrowly tailored, and the facts that the proponents put forward are not in the form of evidence. They are the ultimate definition of conjecture. Witnesses might be concerned about their safety. There's no actual factual evidence of any of that. Thank you, Your Honor. Thank you. Your Honor, Thomas Burke of Davis Wright Tremaine on behalf of the 11 entities that form the Media Coalition. We know the contents of the videotape. It's a 12-day court bench trial where the entire proceedings were open to the public. I would like to address what I think is the questions of the Court with respect to the integrity of the Court's process, and I would submit the other argument on the Court's calendar today is going to have a bearing on this particular appeal, because the proponent's effort to set aside the judgment, contending that former Chief Judge Vaughn Walker could not be objective while in a long-term same-sex relationship, created an even greater need for the public to have access to the videotape. It is a greater need than if that argument wasn't there, but that argument raises that specter, and that, of course, doesn't address the issue that we've just been discussing with Mr. Olson. I don't want to discourage you from pursuing any issue you think, although I have a little difficulty with your argument thus far. But you might want to address during your argument the issue we have been discussing about the integrity of the Court and whether its promises mean anything and what we can just be disregarded. Your Honor, speaking directly to that issue, I do not think this is a question of Judge Walker not wanting to make it very plain as to what he wanted to do with that videotape. There was an opportunity to object to that. There was an opportunity to come to this Court and seek a remedy from this Court from that portion of the judgment entered in August. That was not done. That was a point specifically emphasized by Chief Judge Ware. When you say what he wanted to do with it, what do you mean what he wanted to do with it? I think it's very clear in the record that he indicated that it would be useful to him for his deliberations, and he put it in the record for those purposes. He also allowed counsel to use it in arguments, portions of it in arguments, which the plaintiffs did. All of that makes it relevant for this Court's inquiry into whether or not there was something that was untoward by the Court in doing that, whether there was a promise broken. Yes, Judge. In the course of telling parties that they could use those portions in their argument, he said parties will, of course, be obligated to maintain as strictly confidential any copy of the video pursuant to paragraph 7.3 of the protective order, which limits disclosure to counsel experts and court staff. Isn't that correct? Yes, Your Honor. And I wanted to point out to the Court as well the question earlier about the copy, and it was a copy that Judge Walker had upon his retirement. It was not the only copy. The Court retained a copy of it. I think that what the Court is getting to is the question of whether or not it was confidential at one point, and it was. What is the question? Well, the question, that may be one of the questions, but the question for me, and you have now the opportunity to persuade me, is whether lawyers can rely upon the promises made by a trial judge which cause them to withhold a specific course of action. Your Honor, I think ---- I mean, this happens all the time in trying cases. I tried cases for 25 years, and when a judge said A is not going to happen and you can rely upon that, A did not happen. But, Your Honor, there was a specific course of action where once that was placed in the record, there was an opportunity to appeal that, to object to that, and that was not done. There was an opportunity to say, I am concerned about the common law and the right of access under the common law, which is clear in this Court, and I'm concerned about that and I want to preserve that. That was not done. That was not done then and it was not done later. Why would they have to do that if there was a promise by the judge that it would not be released for use? You know, that's Judge Hawkins' question. If that doesn't mean anything, that's one thing for the judicial system, but if it does and it's placed by the judge in there under seal and he said that the ---- let's assume he said that it's not going to be released for use at some point in these proceedings, why would you have to question putting it in the record, even if there's a common right, common right, common law right to access, wouldn't that be subject to the judge's commitment that it wouldn't be released? I think that ---- I think that promise, if a promise were made, and I don't think it was that explicit here, I think that promise would still be necessarily checked by the common law right of access, which exists when records are ---- When judicial records are there. Subject to a compelling reason. Correct. And there is no doubt. And the compelling reason being that the word of the court is supposed to mean something. Your Honor, the word of the court does mean something, but the check that needs to also be in place is if circumstances have changed. And when the court asked earlier on what that evidence meant, the difference between the evidence offered by the proponents and what's happened now is there was a trial. There was a public trial, and that's what this videotape is about. And that's a substantial change circumstance, which when this Court is reviewing, as Judge Ware did, reviewing the circumstances supporting the sealing order, it looks as to whether or not there will be any harm coming from it. And I don't believe the Court should be persuaded by any of the four categories of harms that were identified by the proponents. I guess I'm having a tough time with your argument there when Judge Walker says, in his opinion, the potential for public broadcast in this case has been eliminated. He criticizes the proponents in that opinion and says, I don't know why you didn't bring these witnesses forward. The witnesses, you said, were reluctant to appear for any recording of any sort, but we have, in fact, eliminated the chance for any recording to be public broadcast. So bring your witnesses forward. That was right in his opinion. So how can you suggest, then, that the harm has been eliminated? Your Honor, I'll answer this question. I want to defer to my counsel. We are splitting the time. The harm is eliminated because that testimony went about publicly. It went about as only two witnesses testifying for a 12-day trial. That was already done when he made this decision in his opinion. Your Honor, if there was harm that flowed from this, it would be before the Court in the record, and that harm is not present. And I think it would be a far greater harm if something that we know, a videotape that we know has public trial testimony is kept secret because it is something that casts a cloud on these deliberations and the important merits, regardless of how they come out by this Court. Ms. Stewart. Thank you. Good afternoon, Therese Stewart for the City and County of San Francisco. I want to jump right into the issue of the integrity of the Court. And I want to start with where I think everyone's in agreement, which is that factual findings made by the district court in this matter are to be reviewed by this Court for an abuse of discretion standard. And Judge Ware very carefully looked at the record in this case on the precise issue that the Court's been discussing for the last 10 or 15 minutes, which is whether Judge Walker in fact made a commitment not to have the recording ever see the light of day. And Judge Ware specifically found that the record does not support the contention that Judge Walker limited the digital recording to chamber's use only and that he made        It's what the Court has done. And the Court has made many of the arguments that at least two of the parties obtained copies. That was for the same purpose, to assist the judge in arriving at a decision. Well, but it was an open court, Your Honor. And, again, Judge Ware looked very careful. It's a secret about what was in the recording. It was the same thing that went on in open court. That's correct, Your Honor. Well, that had nothing to do with the final argument. Well, I'm saying that Judge Ware made a finding looking at all of the circumstances and what the issue about the saying by Judge Walker late in the process that the possibility of broadcast was over, number one, was made long after the decision to record and placing it in the record. And so the idea of reliance doesn't make any sense here. But Judge Ware found there was no commitment in the first place, and I don't think this Court should overturn that finding. I think it's based on his review of all the facts and statements that were made in the record. And seal orders, as this one, often have a provision, and the one in this case did, that says even if the court signs off on something being placed under seal, it doesn't prevent the parties from later revisiting that. And in a case called Lugash, I think it was the Second Circuit, held that it's not reasonable to rely on the fact that a district court may have placed something under seal or decided not to disclose it at one time, that it can never be revisited. And the public right of access is one of the key reasons for that, because it's not just about the parties. The judicial process is supposed to be open to the public. And so to rely on the idea that because something was put under seal at one point in time, it remains there forever is not a reasonable form of reliance. And I don't think Judge Walker made a determination, one way or the other, what would ultimately might be what use might be made of this video. He made a determination of the reason that he wanted it and the use for it, and he put it into the record, but he didn't. Maybe you didn't hear what Judge Smith read to you about Judge Walker saying that the potential for the use of this had been eliminated. Well, he said that the potential for broadcast. But I wanted to talk about what that means, because I think if you look at Judge Kaczynski's letter that he wrote to the judicial conference about the meaning of the Ninth Circuit rule and the meaning of 77-3, which was adopted in pursuant to the Ninth Circuit's policy, is that the rule against broadcast talks about in the environs of the courtroom, or in the case of the Ninth Circuit policy, talks specifically about media coverage. And they're talking about immediate coverage by the media, cameras used by other people besides the court in the courtroom. And Judge Kaczynski doesn't read that to preclude a court taking a recording for its own purpose and that later being used. It's a different ---- Is Judge Kaczynski's letter somehow precedent for me? I think Judge Kaczynski's letter explains the Ninth Circuit policy on this. And the ---- Well, I guess it may be his view of the Ninth Circuit policy. I'm trying to say, is it precedent? It's not precedent in the sense of a court decision, Your Honor. But I do think it carries pretty persuasive force. Well, I'm glad. If he were here, he'd be happy. Was that letter written before the Supreme Court decision? Yes, that letter was. And it's referred to in the ---- Well, first of all ---- No, I saw the letter. I just meant to check the date. I don't think the Supreme Court agreed with that letter. Do you? I don't know that they took a position one way or the other. It is fair to say that the dissent cited it and the majority did not. No, it was a very good dissent. I agree. But not only do I agree that it was good, I agree with it on the merits. But the judicial ---- But we're bound by the majority. Well, the Supreme Court did not resolve the issue before this Court. It didn't even come close to it. The Supreme Court said, look, you didn't give sufficient process in trying to amend your rule to come into this pilot court. But what it said that mattered is, therefore, you can't record this for broadcasting. No. Yes. It said you couldn't broadcast the proceedings. At the time, the issue was whether the Court was going to immediately send the recording simultaneously outside the courtroom to other courthouses around the country. And right after that, Judge Walker said, okay, I'm going to record it for this one purpose. I'm going to record it to help me decide this case in chambers. But that, again, Judge Ware found that wasn't a commitment for all time. And I don't think the case law supports the notion that where a judge puts something under seal in the moment, which I think was a fair thing for the Court to do in light of the uncertainty, but it doesn't mean that it's sealed for all time. We're two years after the trial. But what does the word eliminated mean? He said that the possibility of broadcasting. I think the word broadcast is the more important one, Your Honor. And the word broadcast meant immediate showing. It wasn't broadcast. It was public broadcast. Yes. Public broadcast meaning the immediate transmission of that. And, frankly, again, if you agree with Judge Kaczynski's version or understanding of the rule and also with Judge Ware's, well, Judge Ware didn't specifically determine the meaning of the rule. But basically, it is referring to media cameras coming in the courtroom, not to recording for the judge's own purposes, and not – and it doesn't address what happens to the recording after the fact. Usually I agree with Judge Kaczynski, but not always. And I think probably each of us has on occasion disagreed with Judge Kaczynski. But we've taken you over time. So thank you very much. Thank you. Your Honor, with the Court's permission, just a couple of very quick points in rebuttal. Reference was made to the point that we did not object in the closing argument when the videotape was utilized. And the reason we didn't object is there hadn't been a violation of 77-3, which precludes public broadcast outside the courtroom. So we had no basis to object on the closing. What do you think the effect is of your allowing the judge to place the recording in the record without objection? Your Honor, of course, we only failed to object because it was under seal. And we don't think there's any talismanic or magical significance to the fact that it was placed in the record. We can see that in the Phillips case in this court where the court said, well, it was attached to a nondispositive motion and the strong presumption of the common law isn't going to apply, even though it was absolutely in the record in that case. If we look at what Judge Kolar-Kateli did in the McConnell campaign finance case, she had material that was under seal that she cited to in her opinion. And she still said, I'm not going to unseal that information. And so just because it's in the record doesn't necessarily mean that the common law applies to it. Certainly in McDougall, President Clinton's videotaped deposition was played to the jury, it was in the record, and yet, nevertheless, the common law wasn't even deemed to apply to it. So we don't think there's any special significance to that fact, Your Honor. I would also say that we've heard that there's no evidence of harm in this record. That is exactly what they told the Supreme Court of the United States in January of 2010, and the Supreme Court said we had substantiated our concerns. If there are no further questions from the Court, thank you, Your Honor. Thank you, counsel. The Court will take a ten-minute recess before the next – before hearing the next case. All rise.
judges: Reinhardt, Hawkins, Smith